## H. F. WILCOX OIL & GAS CO. v. JAMISON, Adm'r.

No. 32576. March 2, 1948.

190 P. 2d 807.

Clayton B. Pierce, of Oklahoma City, for plaintiff in error.

Speakman & Speakman, of Sapulpa, for defendant in error.

WELCH, J. This is an action for damages alleged to have been sustained by reason of the death of H. R. Crutchfield.

Plaintiff's petition alleged that Crutchfield at the time of his death was an employee of the defendant working in a shop and garage maintained by defendant for the repair and reconditioning of its delivery trucks; that the deceased was an automobile mechanic and was not skilled in the craft of replacing tires upon large trucks

and such fact was known to defendant; that nevertheless the defendant imposed such duties upon the deceased; that on the date of his death the deceased had removed an old casing and placed a new casing on a certain White truck; that the quarters in which the deceased was required to work were narrow and inadequate and not equipped with proper lights for the safe performance of such work; that such truck casings when placed on the truck wheel are first fitted around a removable rim which becomes fastened to the casing by the inflation of the casing; that the tire removed by the deceased had become old and in bad state of repair and the rim had become rusted so that such rim adhered to the casing and inner tube as the same was removed and discarded by the deceased; that owing to the cramped condition in which the deceased was required to work, and owing to the poor lighting condition furnished by the defendant for the purpose of performing his work, the deceased did not and could not, through the exercise of reasonable care, observe that the said rim adhered to the casing at the time such casing was discarded; that the defendant had carelessly and negligently furnished rims suitable only for other trucks and had carelessly and negligently failed to provide extra rims for the use of this particular truck; that the defendant owned and kept at said garage some eight or ten trucks, but only the one upon which deceased was working used this particular kind of rim; that the use of a rim, other than the one suitable for use by this particular truck, was dangerous; that the deceased in the exercise of reasonable care was unable to find or locate in the supplies furnished by the defendant corporation a rim suitable for the truck in question, and owing to his lack of knowledge and experience in the changing of truck tires, did not know or understand the difference between such rims or that the use of any other rim would be dangerous.

It was further alleged that it was the duty of the defendant company to properly instruct and advise the deceased of such fact, inasmuch as the defendant company had carelessly failed to provide suitable rims for such purpose; that as a proximate result of the careless and negligent acts and omissions of the defendant as herein set forth, and on account of the careless and negligent acts of the defendant in failing to provide suitable and adequate lights and sufficient room in which the deceased was required to perform such labor, and as a proximate result of the other careless and negligent acts and omissions of the defendant company as herein stated, while the deceased was attempting to place such rim and new casing upon the wheel of such truck, said rim was caused to fly violently from its place by reason of the air pressure in such inner tube and casing, resulting in the instant death of the deceased; that the death was proximately caused and brought about by the negligent acts of the defendant as set forth, and to plaintiff's damage.

The defendant, after admitting its identity and the employment of Crutchfield, answered by way of a general denial and affirmatively pleaded the defense of contributory negligence and assumption of risk.

The cause was submitted to a jury which returned a verdict in favor of the plaintiff. From the judgment entered in accord therewith, defendant appeals.

All assignments of error are presented under six propositions. In propositions one and two it contended that actionable negligence on the part of the employer proximately causing the accident and consequent injury to the servant was not shown by the evidence and that the court erred in refusing to withdraw from the consideration of the jury allegations of negligence, charged in the petition, but not supported by the evidence.

It was shown by the evidence that Crutchfield filed a written application for employment with the defendant,

stating his occupation to be that of a mechanic and gas engine operator. He worked for defendant at its garage in the maintenance of trucks for about eleven months. Among the duties he performed was that of changing tires on the trucks. The trucks were large oil delivery trucks. In fitting the large truck tire to the wheel the tire is first placed upon a rim to which is then adjusted a metal ring and a lock ring so that the tire becomes locked upon the rim by the pressure against the lock ring formed by inflation of the tire. These tires when inflated for their proper use carried such a compression of air that if the lock rings did not hold an explosion of great force would occur. For the first nine or ten months of Crutchfield's employment the defendant operated two International trucks which were serviced at the garage. He frequently changed the tires on these trucks. During the time, lock rings or rims occasionally become damaged and new rings and rim assemblies were kept at the garage and occasionally used for replacement of damaged parts.

About 30 or 40 days before deceased was killed, defendant began operating five more International trucks and two White trucks in the vicinity of the garage where deceased was employed. At the time deceased was killed he was working on one of the White trucks. There was evidence from which a reasonable inference could be drawn that he had never before changed a tire on a White truck and that such fact was known to the defendant. The International trucks were equipped with "Firestone" tire rings. The White trucks were equipped with "Goodyear" tire lock rings. These lock rings could not be interchanged with safety.

The White truck on the date of the accident was driven into the garage to a distance of about two-thirds of the length of the garage. There was a space of from two to three feet between the truck and the side wall of the garage. Crutchfield removed an old tire and rim from the truck's wheel and rolled it to the front of the truck under a light for the purpose of placing a new tire on the rim. The old tire was removed from the rim. The lock ring had rusted and adhered to the tire. The old tire with the lock ring stuck to it was rolled away from the front of the truck and out of the circle of light in that working place to another place in the garage. A new tire was placed on the rim and then search made for the lock ring which held the old tire in place. After some unsuccessful search, but without inspection of the old tire, a new "Firestone" lock ring was removed from the wall of the garage and placed on the new tire and rim.

One witness testified that the old tire was rolled away from the front of the truck before any effort was made to install the new tire on the rim, that "we didn't have enough room for two tires in front of the truck and work."

After the substitute "Firestone" lock ring had been installed the new tire was inflated and Crutchfield rolled it to the truck wheel and while placing it on the wheel the lock ring failed, causing an explosion of the tire and the death of Crutchfield.

It is asserted by the defendant that the first charge of negligence in plaintiff's petition, that the quarters in which the servant was required to work were too narrow and were therefore not safe, must fail in that the proof did not establish the relation of proximate cause and effect between the narrowness of the working place and the accident. Defendant says the charge that the place where the servant was required to work was unsafe because of insufficient light, was not established in that the proof was to the effect that the tire while still mounted on the rim was taken off the wheel and rolled around in front of the truck, and there worked upon under a large light. Defendant says the charge that the defendant failed to furnish extra or spare rims for the use of the servant must fail, in the light of proof to the effect that there

were spare rims available in the warehouse, which was some 50 to 150 feet from the garage where Crutchfield was working, and that Crutchfield had a key to the warehouse, and specific authority to enter to secure any spare or extra parts needed in his work.

Defendant further asserts that the substitution by Mr. Crutchfield of one kind of type of ring and lock ring for a different kind or type which formed a part of the rim which he had disassembled, was the proximate cause of the accident, and that there can be no question but that he knew he was making a substitution.

In the case of Beasley v. Bond, 173 Okla. 355, 48 P. 2d 299, in the body of the opinion we note this expression:

" . . . One may commit two or more acts of negligence, neither of which alone would cause the injury, but the combined effect of which would cause it. In such case the defendant may not escape liability by the argumentative process of eliminating, one at a time, each of the insufficient contributing causes, meanwhile ignoring their total combined effect."

Plaintiff's petition, while not as clear and specific as it might be, contained a further charge of negligence in that it was the duty of the defendant to warn the deceased of the danger of the use of other rings and of the failure to give such warning.

The petition alleged:

" . . . That the deceased was an automobile mechanic and was not skilled in the craft of replacing tires upon large trucks and such fact was known to the defendant corporation; . . . That the use of a rim other than the one used by this particular truck was dangerous. That the deceased . . . did not know or understand the difference between such rims or that the use of any other rim would be dangerous. That it was the duty of the defendant company to properly instruct and advise the deceased of such fact. . . ."

In Branson v. Branson, 190 Okla. 347, 123 P. 2d 643, it was said:

"Ordinarily, a direct allegation of an ultimate fact may be excused when the fact otherwise sufficiently appears or is necessarily implied from other averments in the petition. Revel v. Pruitt, 42 Okla. 696, 142 P. 1019."

Although plaintiff's petition did not directly state that defendant failed to warn the deceased of the danger in using the wrong ring, such failure was apparent and necessarily inferred from the other facts alleged.

It was established by the evidence that the mounting of heavy truck tires, which required lock rings to hold them in place, is a dangerous operation in that if such rings are not fitted properly they will be thrown off upon inflation of the tire, and with great force upon full inflation of the tire. It was shown that defendant had reason to believe that the deceased at the time of his employment was without experience in the handling of large truck tires. His written application for employment stated his occupation to be that of a mechanic and it was stated that other work for which he was qualified was that of a gas engine operator. It might be argued that any failure of the defendant to instruct him as to the danger became immaterial after he had worked at the employment over a period of months and long enough to learn, by the exercise of ordinary diligence, the dangers of his employment and the method to avoid them; but the evidence shows that there was a change in the appliances which could with reason be said to have augmented the danger, without notice to deceased.

There was evidence, although disputed, tending to show that the deceased on the day of his death had never before changed a casing on a White truck; that over a period of months he had frequently changed tires on the International trucks; that over such period of time the defendant brought only International trucks to the garage; that during that time, tire rings on the International trucks were occasionally damaged so as to require replacement;

that new International rings were kept readily available in the garage; that the use upon a White truck of rings such as used on the International trucks was dangerous, and such fact was known by the defendant and unknown to the deceased.

In Beasley et al. v. Bond, supra, in the sixth paragraph of the syllabus it is said:

"Master cannot free himself from liability for injuries caused by an improper use of the appliances which he has furnished, when that use is directed by him or inadvertently arises by reason of his own negligence."

Although it was shown that proper ring assemblies for White trucks were in a warehouse adjacent to the garage and available to the deceased, such fact did not relieve the master of the obligation to instruct the servant as to the difference in the tire equipment required by the White trucks, and as to the special hazard or danger incident to any effort to use the other equipment interchangeably. And especially is that so when the difference or danger in an interchange of rings was not readily apparent.

Two truck drivers were present when the deceased placed the International truck lock ring upon the White truck rim. Each testified that he had been driving and changing tires on heavy trucks for years and that the lock ring appeared to fit good; that they could see no difference from the usual ring.

In Cincinnati, N. O. & T. P. Ry. Co. v. Gray, 50 L. R. A. 47, 41 C.C.A. 535, 101 Fed. 623, we note this expression:

"The considerations which demand that the master shall furnish for his employees reasonably safe appliances for doing the work imposed upon them necessarily reach to and include the requirement that when new, and, so far as they differ and as far as the particular work is concerned, unknown and untried, appliances as substituted for old ones, he shall give full and plain instructions to employees as to the parts of such appliances which are new in operation, in order that a servant may have a fair opportunity, before incurring danger, to understand the difference which might, if known, produce it."

We agree with the defendant that neither the narrowness of the working space nor the insufficiency of the lights, standing alone, could with reason be said to be the proximate cause of the injury, but we are of the opinion that their combined effect, with the defendant's failure to warn the deceased of the increased danger caused by the introduction of the new type of truck from that upon which the deceased had been working, justified a finding by the jury that defendant was guilty of negligence.

In the case of Enid Electric & Gas Co. v. Decker, 36 Okla. 367, 128 P. 708, this court, in the sixth paragraph of the syllabus, said:

"It is the duty of the master to warn his servant of new or increased dangers caused by a change in his machinery, appliances, or place or method of work, and he will be held liable for injuries resulting from his neglect of duty in this respect."

See, also, Britt et al. v. Doty, Adm'x, 195 Okla. 620, 161 P. 2d 521, where in the syllabus it is said:

"It is the duty of the master to warn his employees of dangers arising out of the progress of the work, which are known to him and unknown to them, and this is a nondelegable duty.

"If there is any testimony reasonably tending to support the verdict of the jury, and said verdict has been approved by the trial court, the judgment will not be disturbed on appeal."

In the third proposition submitted it is urged that the court erred in giving the jury instruction No. 10. This instruction is to the effect that it is the duty of an employer to advise an employee of dangers incident to the employment where known to the employer and not known to the employee, and which could not have been known to

the employee through the exercise of reasonable care on his part.

It is urged that a violation of such duty of the master is not charged in the petition; that the law applicable where the employee is an adult and not inexperienced is not correctly stated; that there was no proof of violation of duty to instruct and warn the employee.

As hereinbefore pointed out, while no direct allegation of violation of duty to warn was charged in the petition, such charge was effectually pleaded in that it is necessarily implied from other averments in the petition. There was evidence tending to prove that defendant had knowledge that the employee was without previous experience in changing heavy truck tires; that after his employment his experience was with International trucks only, where tire ring assemblies were interchangeable; that with the introduction of White trucks, whose rings were not interchangeable with other trucks, the danger of the employment was increased, and that the employee was never advised of such increased danger caused by the change in equipment.

The contention that the instruction is misleading and does not correctly state the law applicable where the servant is an adult and not inexperienced, is predicated on the limitation of the rule that it is the duty of the master to warn an employee of danger in his work where knowledge of the danger is attributable to the servant. The instruction given placed no duty upon the employer to give warning if the employee could, by the exercise of reasonable care, have known of the danger. There was evidence presented concerning the age and experience of the deceased and these matters were for the careful consideration of the jury in determining whether he fully understood and appreciated the dangers of his position. We are of the opinion that the failure in the instruction to make reference to the employee's age and experience did not mislead the jury in its determination of whether he knew or by the exercise of reasonable care should have known of the dangers. We find no fundamental error in the instruction given.

As a fourth proposition defendant asserts that the court's instruction No. 7 was erroneous. That instruction reads as follows:

"You are told that the defendant has plead in this case an additional defense known in law as the assumption of risk by the plaintiff's decedent.

"This defense, if established, constitutes a bar to plaintiff's recovery.

"In this connection, you are instructed that the employee assumes all the ordinary risks naturally incident to and growing out of his employment.

"You are instructed that the employee assumes all the extraordinary risks of which he knew, or through the exercise of reasonable care could have known.

"All those risks which arise from the failure of the employer to exercise reasonable care in the performance of the employer's duty to the employee are extraordinary risks. However, an employee does not assume the risk of his employment unless in addition to his knowledge of the risk, he realizes and appreciates the danger incident thereto."

It is asserted that the last paragraph is both confusing and misleading and is an erroneous statement of law, in that it is an attempt to differentiate between "knowledge of the risk" and "realization and appreciation of the danger incident thereto" in respect to the ordinary risks.

The last paragraph of the instruction in its first sentence contains a definition of extraordinary risks. The second and last sentences of the paragraph clearly have reference to extraordinary risks. In reference to extraordinary risks, this court in Chicago, R. I. & P. Ry. Co. v. Hughes, 64 Okla. 74, 166 P. 411, in the fourth paragraph of the syllabus, said:

" . . . with reference to risks not naturally incident to the occupation, but which may arise out of the failure of the master to exercise due care in the

performance of some duty owing by him to the servant, the rule is that the servant does not assume such risks until he becomes aware of such negligence of the master and of the risks arising therefrom, unless the defect and risk are so apparent and obvious that an ordinarily careful person would observe the one and appreciate the other."

When this definitive paragraph of instruction No. 7 is read, with the instruction as a whole, although the language used in the last sentence does not appear to have the highest degree of clarity, it may be said that the instructions as a whole fairly state the law applicable to the defense presented, and in language not such as to have misled the jury. The following statement from the opinion in Cushing Refining & Gasoline Co. v. DeShan, 149 Okla. 225, 300 P. 312, is applicable here:

"When read as a whole, the court instructed the jury that the decedent assumed all ordinary risk incident to his employment and all extraordinary risks and hazards resulting from the negligence of the defendant of which he had knowledge, or which were so obvious that an ordinary person would have understood such risks. That is the correct rule of law in this state."

In proposition 5 defendant asserts it was error for the court to give its instruction No. 9. It is contended that instruction imposes on the defendant a higher degree of care than ordinary or reasonable care.

The instruction is to the effect that greater care is required of those who handle dangerous instrumentalities than is required in the ordinary affairs of life. The jury is advised that if they find that the work deceased was doing was inherently dangerous, then it was the duty of both the defendant and of the deceased to use that degree of care to avoid injury commensurate with the danger involved.

In other instructions the jury was advised of the duty of the master of the employee in the performance of his work. In instruction No. 12, the jury was advised:

"It is the duty of the master to use reasonable care to furnish an employee with a reasonably safe place in which to work, reasonably safe tools and equipment with which to work."

In instruction No. 8, the jury was advised that:

"It was the duty of Mr. Crutchfield to exercise reasonable care and caution for his own safety and . . . in performing his work."

Instruction No. 3, given to the jury, reads as follows:

"You are instructed the negligence is the failure to do what a reasonably prudent man, under the existing circumstances would have done or doing what a reasonably prudent man would not have done under the circumstances."

Instruction No. 9 and the other instructions make reference to the relationship of master and servant existing between the defendant and the deceased. Instruction 9 was a statement by the court of the standard for the measurement of the conduct of both of the parties in the particular situation by which they should be adjudged in the determination of whether either or both were negligent rather than a statement of the degree of care required of each. We think the jury must have so understood the instruction, and that they were not misled into applying a greater degree of care than ordinary care in the light of all the instructions given.

As said in 39 C. J. 282:

"The duty of the master is that of exercising reasonable care whether the business is comparatively safe or is extremely dangerous, but the acts of care and precaution required by ordinary prudence are to be determined as matters of fact from a consideration of the danger incident to the agency employed as well as from other circumstances and conditions, and the precautions required increase with the known dangers."

Instruction No. 9, standing alone, cannot be said to correctly state the degree

of care required, but when considered with the other instructions, there is no conflict, and as a standard of measuring conduct under the circumstances of this case, when combined with the other instructions, the law is correctly stated that the duty of the master is that of exercising reasonable care commensurate with the nature of the business. The rule stated in the fourth paragraph of the syllabus in Cushing Refining & Gasoline Co. v. DeShan, supra, is here applicable:

"All the instructions should be considered together. If when considered as a whole they state the law correctly, and without conflict, this is sufficient, even though one or more of them standing alone might be incomplete."

As its sixth and final proposition, defendant urges that the court erred in admitting incompetent and prejudicial evidence.

A certain witness was permitted to express an opinion concerning the danger of changing truck tires in a limited space and the effect of the available light upon the safety in such work, all over the objections of defendant. The record reflects that another witness gave testimony of the same tenor without objection from defendant. Under such circumstances, the defendant will not now be heard to complain. Wood v. Kerr Dry Goods Co., 190 Okla. 197, 121 P. 2d 992.

We have examined the record and have found competent testimony reasonably tending to support the verdict of the jury, and have found no prejudicial error.

The judgment is affirmed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, CORN, and LUTTRELL, JJ., concur. RILEY, and GIBSON, JJ., dissent.

